THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| AGROWSTAR, LLC; J&D OF LANCASTER, | : | |
| INC.; PERFORMANCE AG, LLC; and | : | |
| KEVIN BAUCOM, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action |
| | : | No. 5:14-cv-379 (CAR) |
| BRANCH BANKING & TRUST COMPANY, | : | |
| JEFF KIES, CARL MAKS ADVISORY | : | |
| GROUP, STEVEN D. ARNT, ROBERT D. | : | |
| DRUM, CYNTHIA D. GABRIEL, DIANNE | : | |
| D. FULBRIGHT, BOYD H. DRUM, | : | |
| BREVARD ARNDT, and ALEX ARNT, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

## ORDER ON MOTION TO REMAND AND MOTION TO TRANSFER

This case is currently before the Court on Defendants' Motion to Transfer [Doc. 8] this case to the Bankruptcy Court in the Western District of North Carolina, and Plaintiffs' Motion to Remand [Doc. 23] the case to the Superior Court of Houston County, Georgia where it was originally filed. On September 28, 2015, this Court held a hearing on these matters. After thorough consideration of the parties' arguments, briefs, and relevant authorities, the Court exercises its discretion to ABSTAIN from exercising any original jurisdiction pursuant to 28 U.S.C. § 1334(c)(1) and hereby REMANDS this

1

case on equitable grounds pursuant to 28 U.S.C. § 1452(b) to Houston County Superior Court. Thus, Plaintiffs' Motion to Remand [Doc. 23] is **GRANTED**, and Defendants' Motion to Transfer [Doc. 8] is **DENIED**.

**BACKGROUND**

At the oral argument hearing on September 28, 2015, the Court thoroughly set forth the pertinent background and procedural history of this case, and it will not do so again here.

On October 23, 2014, Defendants removed this case to federal court, alleging both original and diversity jurisdiction. Defendants contend this Court can exercise original jurisdiction under 28 U.S.C. § 1334(b) because Plaintiffs' claims arise in and relate to Midstate Mills' bankruptcy in the Western District of North Carolina. In addition, Defendants contend the Court can exercise diversity of citizenship jurisdiction under 28 U.S.C. § 1332 because Plaintiffs fraudulently joined Plaintiff Kevin Baucom, the only non-diverse Plaintiff, to evade federal jurisdiction.   As set forth below, Plaintiff Baucom was not fraudulently joined, and therefore this Court cannot exercise diversity jurisdiction. Although the Court had "related to" bankruptcy jurisdiction at the time the Complaint was removed, the Court will abstain from exercising such jurisdiction and remand this case to the Superior Court of Houston County.

# DISCUSSION

## I.   PLAINTIFF'S MOTION TO REMAND

The Court first addresses whether Plaintiff Baucom must be dismissed because of fraudulent joinder, therefore creating complete diversity between the parties such that this Court can exercise diversity jurisdiction. Then the Court will address any original jurisdiction it has under 28 U.S.C. § 1334(b) because this case "arises in" and/or "related to" bankruptcy.

### A.   Standard of Review

Federal courts are courts of limited jurisdiction.[1]  As such, federal courts only have the power to hear cases that they have been authorized to hear by the Constitution or the Congress of the United States.[2] Because federal court jurisdiction is limited, the Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear.[3] This case was originally filed in state court and removed to federal court; thus Defendants bear the burden of proving that federal jurisdiction exists.[4] Moreover, this Court's jurisdiction is determined based on the Plaintiff's pleadings at the

---

[1] *See Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375 (1994); *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (1994); *Wymbs v. Republican State Exec. Comm.,* 719 F.2d 1072, 1076 (11th Cir. 1983), *cert. denied,* 465 U.S. 1103 (1984).
[2] *See Kokkonen,* 511 U.S. at 377.
[3] *See Burns,* 31 F.3d at 1095.
[4] *Williams v. Best Buy Co., Inc.,* 269 F.3d 1316, 1319 (11th Cir. 2001).

3

time of removal.[5]  "[I]f a district court has subject matter jurisdiction over [an] action at the time of removal, subsequent acts do not divest the court of its jurisdiction over the action."[6]

### B.  Diversity Jurisdiction and Fraudulent Joinder

Federal district courts have jurisdiction over two types of civil actions: (1) those that involve a federal question, meaning the claim arises under the Constitution, laws, or treaties of the United States; and (2) those that invoke the court's diversity jurisdiction, meaning they involve an amount in controversy in excess of $75,000 and are "between citizens of different States, between U.S. citizens and foreign citizens, or by foreign states against U.S. citizens."[7]  In cases removed to federal court based on diversity jurisdiction, removal is permissible only "if there is complete diversity between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum State."[8]

Defendants contend Plaintiffs fraudulently joined Kevin Baucom, the only non-diverse Plaintiff, and therefore this Court lacks diversity jurisdiction. There is some question as to the viability of fraudulent joinder as applicable to plaintiffs (as opposed to

---

[5] *Poore v. American-Amicable Life Ins. Co. of Tex.*, 218 F.3d 1287, 1290 (11th Cir. 2000), *overruled in part on other grounds by Alvarez v. Uniroyal Tire Co.*, 508 F.3d 639, 640-41 (11th Cir. 2007); *Legg v. Wyeth*, 428 F.3d 1317, 1322 (11th Cir. 2005).

[6] *Behlen v. Merrill Lynch*, 311 f.3d 1087, 1095 (11th Cir. 2002) (citing *Poore*, 218 F.3d at 1290-91).

[7]  *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (citing 28 U.S.C. § 1332).

[8] *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 84 (2005).

non-diverse defendants).[9] However, the parties agreed at oral argument the Court should analyze the alleged fraudulent joinder of Plaintiff Baucom under the same framework the Eleventh Circuit has established for analyzing the alleged fraudulent joinder of non-diverse defendants. Because the parties have agreed the fraudulent joinder doctrine encompasses the fraudulent joinder of plaintiffs, the Court will assume the same.

Under the fraudulent joinder doctrine, when a plaintiff names a non-diverse defendant[10] solely to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the case to state court.[11] The fraudulent joinder doctrine applies when "(1) there is no possibility the plaintiff could establish a cause of action against the resident [i.e., non-diverse] defendant; (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court; or (3) plaintiff's misjoinder of [the] non-diverse defendant is so egregious as to constitute fraudulent joinder."[12] The removing party must prove the fraudulent joinder doctrine's applicability by clear and convincing evidence.[13] The district court must evaluate the factual allegations in the light most favorable to the

---

[9] *See Johnston Industr., Inc. v. Milliken & Co.*, 45 F. Supp. 2d 1308, 1313-14 (M.D. Ala. 1999).

[10] Because the law remains unclear whether fraudulent joinder is applicable to plaintiffs, the Court uses the "non-diverse defendant" framework established by the Eleventh Circuit, with the understanding that by agreement of the parties it applies to Plaintiff Baucom.

[11] *Id.; see also Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1297 (11th Cir. 2007).

[12] *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011) (quotation omitted).

[13] *Id.*

5

plaintiff and must resolve uncertainties about state substantive law in favor of the plaintiff.[14]

In the instant case, Defendants claim that there is no possibility that Plaintiff Baucom could establish a cause of action against Defendants. However, the standard is very lenient on the plaintiff. The court should not weigh the merits of the plaintiff's claims beyond determining whether they are arguable under state law, and should resolve uncertainties about state substantive law in the plaintiff's favor.[15]  If there is even a possibility that a state court would find that the complaint states a claim against any of the non-diverse defendants, then the joinder was proper and the federal court must remand the case to the state court.[16] Indeed, "plaintiff need not have a winning case against the allegedly fraudulent defendant"[17]; fraudulent joinder requires nothing "more than conclusory allegations or a certain level of factual specificity" to show the possibility of a viable state claim.[18]  Further, to determine whether a state court would find that the complaint states a cause of action, federal courts "necessarily look to the pleading standards applicable in state court, not the plausibility pleading standards prevailing in federal court."[19]

---

[14] *Id.* at 1333.

[15] *Id.*

[16] *Id.*

[17] *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998)

[18] *Stillwell*, 663 F.3d at 1334.

[19] *Id.*

Georgia courts employ a "notice pleading standard," under which a plaintiff may plead conclusions, and those conclusions "'may be considered in determining whether a complaint sufficiently states a claim for relief.'"[20] "The true test [under Georgia's pleading standard] is whether the pleading gives fair notice and states the elements of the claim plainly and succinctly, and not whether as an abstract matter it states conclusions or facts."[21]

In the Complaint here, Plaintiff Baucom alleges claims for constructive fraud, aiding and abetting constructive fraud, unfair and deceptive trade practices, and negligent misrepresentation. In Georgia there are five elements of the tort of fraud. These are a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by the plaintiff, and damage to the plaintiff.[22] Georgia also recognizes constructive fraud, whereby the defendant may be held liable if he fails to disclose information he was under a legal or equitable duty to disclose.[23] To state a claim for negligent misrepresentation claim, Baucom must allege facts showing "(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3)

---

[20] *Id.* (quoting *Guthrie v. Monumental Props., Inc.,* 141 Ga.App. 21, 232 S.E.2d 369, 371 (Ga.Ct.App.1977)).

[21] *Stillwell,* 663 F.3d at 1334 (quotation omitted).

[22] *Grizzle v. Guarantee Ins. Co.,* 602 F.Supp. 465, 467 (N.D.Ga.1984).

[23] *Eason Pubs., Inc. v. NationsBank of Ga.,* 217 Ga.App. 726, 458 S.E.2d 899, 903 (Ga.Ct.App.1995); O.C.G.A. § 23–2–51(b) ("Constructive fraud consists of any act of omission or commission, contrary to legal or equitable duty, trust, or confidence justly reposed, which is contrary to good conscience and operates to the injury of another.").

economic injury proximately resulting from such reliance."[24]

Defendants contend Baucom has no viable claims because (1) the Complaint alleges no communication with Defendant BB&T whatsoever; (2) the only alleged communication, with Defendant Kies, occurred two to three months after Baucom shipped wheat; (3) Baucom filed his separate North Carolina civil claim in December 2012; and (4) Baucom did not petition for Midstate's bankruptcy. Thus, Defendants contend, no misrepresentation could have induced Baucom to ship wheat, and because he in fact filed his own suit in North Carolina, he has no forbearance claim. The Court is unpersuaded.

The Complaint alleges BB&T and Carl Marks, through its agent Jeff Kies, directed Midstate not to pay Plaintiffs, but instead to make debt payments to BB&T. Despite this direction, Midstate continued to represent to Plaintiffs they would be paid, inducing them to continue shipping wheat and refrain from actions to protect their interests. It was not until August 2012 that Plaintiffs were told BB&T would not allow Midstate to pay them for past shipments of wheat. Moreover, BB&T allowed Plaintiffs to believe if they refrained from filing the involuntary bankruptcy or instituting other legal actions, they would be substantially paid. In late October or early November, Kies represented to Plaintiff Baucom that a sale of Midstate "was in the works that would pay debt owed to

---

[24] *Marquis Towers, Inc. v. Highland Group,* 265 Ga.App. 343, 346, 593 S.E.2d 903, 906 (2004) (citation and quotation marks omitted).

8

him by Midstate."[25]  As late as December 18, 2012, BB&T told Plaintiffs the sale of Midstate was proceeding and there was a carve out for trade creditors. The actual sale resulted in no assumption of trade debt and was done at the direction of BB&T for benefiting Defendants. Had Plaintiffs filed an involuntary bankruptcy petition against Midstate in October or November 2012, the assets could have been sold to other known purchasers who were willing to assume the trade debt; Midstate would have had more favorable cash flow; and a bankruptcy at that time would have provided operating cash to keep the business alive while participating in a full sale process.

In light of the lenient standard to plaintiffs, the allegations here sufficiently satisfy the notice pleading standard such that this Court cannot find Plaintiff Baucom fraudulently joined this action. The allegations at least possibly establish Defendants engaged in a concert of action to perpetuate a fraud against Plaintiff Baucom.

The Court is also unpersuaded by Defendants' argument that Baucom's claims are not properly joined because they do not arise out of the "same" transaction, occurrence, or series of transactions or occurrences as those of the other Plaintiffs. Ultimately Defendants simply contend Baucom was misjoined under Rule 20.[26]  The Eleventh Circuit has specifically stated that "[w]e do not hold that mere misjoinder is

---

[25] Compl., para. 51.

[26] Fed. R. Civ. P. 20(a)(1) (a plaintiff may join in an action if "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action.").

fraudulent joinder."[27]  Defendants have failed to establish Baucom's joinder in this action was egregious. Thus, because Baucom is a properly joined Plaintiff, no complete diversity between the parties exists, and this Court cannot exercise diversity jurisdiction over this case.

<u>Bankruptcy Jurisdiction</u>

In bankruptcy removal cases, the following framework is useful in guiding the Court's analysis: "(1) Does subject matter jurisdiction exist?, (2) If so, should that jurisdiction be exercised or is abstention or remand appropriate?"[28]

Pursuant to 28 U.S.C. § 1334(b), "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." "Arising under" typically means "invoking a substantive right created by the Bankruptcy Code"; "arises in" is "generally thought to involve administrative-type matters"; and "related to" is whether "the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy."[29]  For the purposes of establishing jurisdiction, it is only necessary to find the case is "related to" bankruptcy.[30]

The Eleventh Circuit has adopted the *Pacor* test to determine whether "related to"

---

[27] *Tapscott*, 77 F.3d at 1360.
[28] *St. Vincent's Hosp. v. Norrell (In re Norrell*, 198 B.R. 987, 991 (Bankr. N.D. Ala. 1996).
[29] *Lawrence v. Goldberg*, 573 F.3d 1265, 1270 (11th Cir. 2009) (citations and internal quotation marks omitted).
[30] *See In re Taylor Agency, Inc.*, 281 B.R. 94 (Bankr. S.D. Ala. 2001).

jurisdiction exists.[31]  Under *Pacor,* related to jurisdiction exists where there is some nexus between the title 11 case and the related proceeding so that the proceeding "could conceivably have an effect on the estate being administered in bankruptcy."[32]  "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."[33]  "Congress did not delineate the scope of 'related to' jurisdiction, but its choice of words suggests a grant of some breadth."[34]

The Court agrees with Defendants that at the time this case was removed on October 23, 2014, this Court had "related to" bankruptcy jurisdiction. Indeed, the Bankruptcy Court in the Western District of North Carolina found that two of the claims belonged to Midstate Mills, the debtor in the bankruptcy case. Thus, these claims, at the time of removal, could have had an effect on the bankrupt estate.

Having determined that subject matter jurisdiction exists, the Court must next consider whether it is appropriate under the circumstances to exercise such jurisdiction over the claims currently before the Court. Section 1334(c) provides for both mandatory and permissive abstention. Because Plaintiffs did not move for mandatory abstention,

---

[31] *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.),* 910 F.2d 784, 788 (11th Cir. 1990) (adopting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d. Cir. 1984)).

[32] *In re Faloye,* 459 B.R. 865, 868 (N.D. Ga. 2011) (citing *In re Lemco Gypsum, Inc.,* 910 F.2d at 788).

[33] *In re Lemco Gypsum,* 910 F.2d at 788 (quoting *Pacor,* 743 F.2d at 994).

[34] *Celotex Corp. v. Edwards,* 514 U.S. 300, 507-08 (1995).

and the Court cannot raise it *sua sponte*,[35] mandatory abstention is inapplicable here.

However, the Court may nevertheless discretionarily abstain from hearing any matter that derives jurisdiction from § 1334. Under the permissive abstention doctrine, a district court may "abstain[] from hearing a particular proceeding arising under title 11 or arising in or arising in or related to a case under title 11," where doing so would be 'in the interest of justice, or in the interest of comity with state courts or respect for state law."[36] In determining whether to abstain under § 1334(c)(1), courts consider the following factors:

(1) The effect of abstention on the efficient administration of the bankruptcy estate;
(2) The extent to which state law issues predominate over bankruptcy issues;
(3) The difficulty or unsettled nature of the applicable law;
(4) The presence of a related proceeding commenced in state court or other non-bankruptcy court;
(5) The basis of bankruptcy jurisdiction, if any, other than 28 U.S.C. § 1334;
(6) The degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
(7) The substance rather than form of an asserted "core" proceeding;
(8) The feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
(9) The burden of the bankruptcy court's docket;
(10) The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
(11) The existence of a right to a jury trial; and

---

[35] *See* 28 U.S.C. § 1334(c)(2) ("Upon timely motion of a party"); *In re Norrell*, 198 B.R. 987, 997 (N.D. Ala. 1996).
[36] 28 U.S.C. § 1334(c)(1) ("Noting in this section prevents a district court in the interest of justice, or in the interest of comity with state courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11").

(12)    The presence in the proceeding of non-debtor parties.[37]

"Courts should apply these factors flexibly, for their relevance and importance will vary with each particular circumstance of each case, and no one factor is necessarily determinative."[38]

Here, the application of the above factors undoubtedly favors abstention. First and foremost, as the Bankruptcy Court in the Western District of North Carolina found, the eight remaining claims in this action are personal to Plaintiffs; Plaintiffs have dismissed the two claims the Bankruptcy Court found were part of the estate. Second, Midstate's bankruptcy estate has been fully administered and is closed. Thus, these claims will have no effect on the estate. Third, Plaintiffs' claims are all state law claims. Fourth, this action has no independent basis for jurisdiction and is a non-core proceeding. Any relatedness to bankruptcy appears tenuous at best. Finally, the debtor has never been a party to this action. Ultimately, Plaintiffs' remaining claims arise in state law. Even if the claims relate to bankruptcy at all, such relation is remote because the estate has been administered, and the claims are personal to Plaintiffs. Indeed, looking at the Complaint as it currently exists, this Court would not even have "related to" jurisdiction over the remaining claims. Thus, abstention is appropriate in this case.

28 U.S.C. § 1452(b) allows a court to remand claims on "equitable grounds." "The

---

[37] *In re Norell*, 198 B.R. at 995 (citations omitted).
[38] *Cassidy v. Wyeth-Ayerst Laboratories Div. of American Home Products Corp.*, 42 F. Supp. 2d 1260, 1263 (1999) (citation omitted).

equitable considerations relevant to determine the appropriateness of equitable remand and permissive abstention are essentially identical, and therefore a court's analysis is substantially the same for both types of relief."[39]  Specific equitable grounds include: "(1) forum non-conveniens; (2) that the entire action of a bifurcated matter should be tried in the same court; (3) that a state court is better able to resolve state law questions; (4) expertise of a particular court; (5) judicial economy; (6) prejudice to the involuntarily removed party; (7) comity; and (8) the lessened possibility of an inconsistent result."[40]

In addition to the reasons discussed above, the interests of judicial comity and economy strongly favor remand in this case. State courts have long been considered the preferred arbiters of state law claims, and the abstention powers have been interpreted broadly.[41]  "State courts, not federal courts, should be the final arbiters of state law."[42]

Defendants argue judicial economy would be best served by transferring the case to the Bankruptcy Court in the Western District of North Carolina. Federal Rule of Bankruptcy Procedure 7087 states that the Court may transfer an adversary proceeding to another district pursuant to 28 U.S.C. § 1412 "in the interest of justice or for the convenience of the parties." The determination of whether to transfer venue is within the

---

[39] *Vision Bank v. Platinum Investments, L.L.C.*, No. 11-00093-KD-B, 2011 WL 2144547, *2 (S.D. Ala. May 11, 2011) (citations and internal quotation marks omitted).
[40] *In re Norrell*, 198 B.R. at 997.
[41] *Baggett v. First National Bank*, 117 F.3d 1342, 1352 (11th Cir. 1997).
[42] *Id.* (citation omitted).

sound discretion of the Court.[43]

In determining whether a case should be transferred in the interests of justice, the Court looks to the following factors: "(1) economics and efficiency of estate administration; (2) presumption in favor of the "home court"; (3) ability to receive a fair trial; (4) state's interest in having local controversies decided within its borders by those familiar with its laws; (5) enforceability of any judgment rendered; and (6) plaintiff's original choice of forum."[44]  These factors do not support a transfer of venue.

"The most important factor is whether the transfer of the proceeding would promote the economic and efficient administration of the estate."[45]  As the case now stands, Midstate's bankruptcy estate will be unaffected by the resolution of Plaintiffs' claims: Midstate's estate has been fully administered, and the Bankruptcy Court has already determined the claims here are personal to Plaintiffs. Moreover, these claims are all Georgia state law claims, which Georgia clearly has an interest in deciding.

Defendants' most compelling argument is that the case should be transferred for the convenience of the parties, because most of the parties and many witnesses are North Carolina residents. However, Defendants' convenience arguments are not compelling enough to overcome the interest of justice factors or remand factors that weigh so heavily in favor of remand to Houston County Superior Court.

---

[43] *In re Holmes*, 306 B.R. 11, 14 (Bankr. M.D. Ga. 2004).
[44] *In re Terry Mfg. Co., Inc.* 323 B.R. 507, 509-10 (Bankr. M.D. Ala. 2005).
[45] *Id.* (citation omitted).

Finally, the Court denies Defendants' request for further briefing. The Court finds any additional briefing to be unnecessary.

## CONCLUSION

For the reasons set forth above, the Court exercises its discretion to ABSTAIN from exercising any original jurisdiction pursuant to 28 U.S.C. § 1334(c)(1) and REMAND this case on equitable grounds pursuant to 28 U.S.C. § 1452(b). Thus, Plaintiffs' Motion to Remand [Doc. 23] is **GRANTED**, and Defendants' Motion to Transfer [Doc. 8] is **DENIED**.

It is SO ORDERED this 30th day of September, 2015.


S/   C. Ashley Royal
C. ASHLEY ROYAL, JUDGE
UNITED STATES DISTRICT COURT